848

EASTERN FREIGHT–WAYS, INC.,
Plaintiff,

v.

UNITED STATES of America and Inter-
state Commerce Commission,
Defendants.

Civ. A. No. 535–58.

United States District Court
D. New Jersey.

Jan. 23, 1959.

Jules E. Tepper, Newark, N. J., J. Stanley Payne, Samuel H. Moerman, Washington, D. C., for plaintiff Eastern Freight-Ways, Inc.

Colin A. Smith, Atty., Dept. of Justice, Washington, D. C., for defendant U. S. A.

B. Franklin Taylor, Jr., Associate Gen. Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for U. S. A. and I. C. C.

Before HASTIE, Circuit Judge, and HARTSHORNE and MORRILL, District Judges.

HASTIE, Circuit Judge.

This statutory District Court of three judges has been impaneled pursuant to the disclosures and the prayer of a complaint seeking to set aside the report and order of the Interstate Commerce Commission in its proceeding No. MC-C-1937, Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 302 I.C.C. 173. The nature of that proceeding has been stated as follows by the Commission in its dispositive opinion.

"The complainant, a corporation engaged in the manufacture and sale

of foam rubber products, with its principal office at New York, N. Y., by complaint filed on March 8, 1956, alleges that the defendant motor common carrier, between January 1, 1953, and February 1, 1955, transported numerous less-than-truckload shipments of foam rubber upholstering pads, in cartons, tendered unrouted, from Buffalo, N. Y., to New York, N. Y., and also from New York City to Buffalo, on which the defendant collected charges based on rates applicable over its interstate route instead of lower rates applicable over its intrastate routes, and that the defendant's action in misrouting the shipments was unjust and unreasonable in violation of section 216 of the Interstate Commerce Act [49 U.S.C.A. § 316]. We are asked to determine the just and reasonable rates.

"A suit filed in the United States District Court for the Southern District of New York, for recovery of the alleged unlawful charges, is being held in abeyance pending disposition of this proceeding."

The Commission decided that the carrier's choice and use of an interstate route, to which a comparatively high freight rate applied, constituted unreasonable and illegal action, and that a reasonable procedure would have been to send the shipments over the carrier's authorized intrastate route, charging its lower published rate for such routing.[1] The Commission also ordered the carrier to cease and desist, and in the future to abstain, from such illegal action.

After this three-judge court had been constituted to hear and decide this case, the Commission filed its answer asserting therein the unquestioned fact that, after the present complaint had been filed, the Commission had amended its disposition of the administrative proceeding by striking out the cease and desist order, leaving only a declaratory ruling that the

route used and the rate charged for specific shipments of foam rubber in 1953, 1954 and 1955 had been unreasonable. In this connection, the parties admit that before the administrative proceeding was decided the carrier by proper procedure had equalized its rates for interstate and intrastate carriage of foam rubber between the same terminal points with the result that there was no occasion, and no desire of the parties, for a cease and desist order or for any mandate as to future conduct.

■ In these circumstances the Commission and the United States have asserted in their answers and now contend that there is nothing before us which is appropriate for decision by a statutory court of three judges. We address ourselves to that question.

It is recognized in the portion of the Commission's opinion quoted above and by all parties in this court that the proceeding before the Commission was brought in aid of a civil suit previously filed in the District Court for the Southern District of New York by the shipper to recover alleged overcharges collected by the carrier between 1953 and 1955 on shipments of foam rubber between New York and Buffalo. The sole purpose of the administrative proceeding was to provide the New York court—which had stayed the civil suit pending administrative guidance—with expert judgment as to the rate the carrier should have charged for the shipments in question. The Commission formally declared its judgment as to this matter and this suit seeks judicial abrogation of that administrative ruling.

In these circumstances we think the law does not require or permit decision by a statutory three-judge court. It is argued that the controversy is justiciable either under Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9), or as "final agency action for which there is no other adequate remedy in any court", under Section 10 of the Adminis-

1. The complainant denies that the published intrastate rate covers the arti-   cle shipped in this case, but we do not reach that issue.

trative Procedure Act. 5 U.S.C.A. § 1009 (c). Cf. Frozen Food Express v. United States, 1956, 351 U.S. 40, 76 S.Ct. 569, 100 .L.Ed. 730; El Dorado Oil Works v. United States, 1946, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053. But though the cited cases lend support to the claim that the agency action is judicially reviewable, they do not indicate that a three-judge court is appropriate in the circumstances of this case.

■■ It was only as an extraordinary dispensation for handling specified types of cases, which were likely to be important and of considerable public concern, that Congress authorized the convening of special three-judge district courts, with attendant expedition of trial procedures and direct appeal to the Supreme Court. See United States v. Griffin, 1938, 303 U.S. 226, 232–233, 58 S.Ct. 601, 82 L.Ed. 764. The Supreme Court has repeatedly pointed out that this extraordinary grant of jurisdiction is to be construed narrowly with a view to confining its exercise to types of cases which merit such special handling. See e. g. United States v. Interstate Commerce Commission, 1949, 337 U.S. 426, 443, 69 S.Ct. 1410, 93 L.Ed. 1451; Phillips v. United States, 1941, 312 U.S. 246, 248–250, 61 S.Ct. 480, 85 L.Ed. 800. Moreover, in authorizing the special statutory procedure in cases challenging orders of the Interstate Commerce Commission, Congress itself was at pains to make the restrictive policy explicit to the extent of excepting from this statutory review orders of the Commission merely "for the payment of money". 28 U.S.C. § 2321. In the converse situation of orders denying reparation, it has now been authoritatively held that a regularly constituted district court rather than a statutory three-judge court provides an appropriate forum. United States v. Interstate Commerce Commission, supra. Thus, if the rule applicable to the review of orders granting or denying reparation governs this case, the controversy is not cognizable by this statutory three-judge court.

We hold that the administrative order before us should be dealt with procedurally as is required of orders granting or denying claims for reparation. For here we have an order of even less effect and significance than a reparation award. It is merely an administrative declaration as to the proper charge for certain services which a carrier has already performed. It is significant only as a guide to judicial decision on a money claim which has resulted from that service. Compared with a decision on a money claim, this order presents an a fortiori case for invoking and enforcing the policy against three-judge procedure in matters lacking general importance and public significance.

In addition, we think no different conclusion would be consistent with United States v. Interstate Commerce Commission, supra. For there as here the administrative decision determined no more than the reasonableness of certain charges which a carrier had already made. That administrative determination had been sought as a basis upon which a shipper might later seek reparation by some other procedure. Therefore, that case seems decisive against the utilization of a three-judge court to pass upon such an order as we have here. Accord, Davidson, Transfer & Storage Co. v. United States, D.C.Md.1958, 164 F.Supp. 571.

It remains to be considered whether it is significant that the order originally entered in the administrative proceeding contained a cease and desist provision. Unquestionably, the inclusion of a cease and desist order made the agency action as originally taken reviewable by a statutory three-judge court. But the cease and desist order has been vacated. All parties recognize that this was proper and that there is no fear of or controversy about repetition of the alleged overcharge in the future. Thus, this court is now being asked to adjudicate a controversy which no longer exhibits the one feature which would give us authority to act. It has recently been held that an administrative order which expired pen-

dente lite should not be judicially reviewed. Eastern Air Lines Inc. v. Civil Aeronautics Board, 1951, 341 U.S. 901, 71 S.Ct. 613, 95 L.Ed. 1341, reversing 87 U.S.App.D.C. 331, 185 F.2d 426. It seems ever clearer that a rescinded portion of an administrative order does not supply a jurisdictional base for judicial review of the agency action.

We hold that as a statutory district court of three judges we are without authority to adjudicate the merits of this controversy. When this judgment shall become final this cause shall continue to be docketed in the District Court for the District of New Jersey for consideration and disposition by a regularly constituted district court.

So ordered.