**SPRINGFIELD AIRPORT AUTHORITY**
et al., Petitioners,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

**Ozark Air Lines, Inc. and American Airlines, Inc., Intervenors.**

No. 15853.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 7, 1960.

Decided Dec. 1, 1960.

Before PRETTYMAN, DANAHER and BASTIAN, Circuit Judges.

Mr. Lenox G. Cooper, Washington, D. C., with whom Messrs. Charles S. Rhyne and Charles A. Dukes, Jr., Washington, D. C., were on the brief, for petitioners.

Mr. Brice W. Rhyne, Washington, D. C., also entered an appearance for petitioners.

Mr. Morris Chertkov, Atty. Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, John H. Wanner, Deputy Gen. Counsel, Civil Aeronautics Board, O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Board, James E. Nathanson, Atty., Civil Aeronautics Board, and Richard A. Solomon, Atty. Dept. of Justice, were on the brief, for respondent.

Mr. James M. Verner, Washington, D. C., for intervenor Ozark Air Lines, Inc.

Mr. J. William Doolittle, Jr., Washington, D. C., with whom Messrs. Howard C. Westwood and Alfred V. J. Prather, Washington, D. C., were on the brief, for intervenor American Airlines, Inc.

Before Mr. Justice BURTON, retired,* and FAHY and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

The question presented is whether a hearing was required under the Federal Aviation Act to enable the Civil Aeronautics Board validly to authorize a temporary suspension of the service called for by an air carrier's certificate.[1] The suspension order was made on the joint application of American Airlines, Inc., and Ozark Air Lines, Inc. It permits, but does not require, American temporarily to suspend service at Springfield and Peoria, Illinois, on its route between Chicago, Illinois, and St. Louis, Missouri, and it further authorizes a temporary change in the service pattern of Ozark, so as to permit it to operate one-stop flights between Chicago and St. Louis via either Springfield or Peoria, provided Springfield is served by two round trips per day, and to take over all intermediate point service between Chicago and St. Louis which had been provided by American. The order also provides that the suspension may continue in effect until ninety days after final decision on applications for certificate amendments which American and Ozark were directed by the Board to file so that the question of permanent change in the service could be determined. The amendment applications were directed to be set down for hearing with all due dispatch.

The City of Springfield, the Springfield Airport Authority, and the Association of Commerce and Industry of Springfield, intervenors in the Board proceeding, now petition this court to set aside the order.

The joint application of American and Ozark which led to the temporary suspension order was filed pursuant to Part 205 of the Board's Economic Regulations,[2] promulgated under the authority of section 401(j) of the Act. Notice was given to interested persons with opportunity to answer in accordance with the Rules of Practice of the Board. Petition-

---

\* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.C.

1. Petitioners do not contend that a hearing was required by the Due Process Clause of the Fifth Amendment. It is urged, however, that section 5 of the Administrative Procedure Act, 60 Stat. 239 (1946), 5 U.S.C.A. § 1004, does provide a right to a hearing. Since section 5 applies only to agency action required by the agency statute to be preceded by a hearing, this leaves only the Federal Aviation Act, 72 Stat. 731, 49 U.S.C.A. § 1301–1542, to be considered in deciding whether a hearing was required.

2. 14 C.F.R. § 205 (1956).

ers filed an answer opposing the application and requested a full evidentiary hearing. American and Ozark jointly replied. The Board, upon consideration of these documents and without a hearing, issued the order, finding the temporary suspension of American's service and the change in Ozark's service pattern to be in the public interest.[3]

In contending that a hearing was essential to the validity of the order petitioners rely upon section 401(j) of the Act which reads:

> "*Application For Abandonment*
> (j) No air carrier shall abandon any route, or part thereof, for which a certificate has been issued by the Board, unless, upon the application of such air carrier, after notice and hearing, the Board shall find such abandonment to be in the public interest. Any interested person may file with the Board a protest or memorandum of opposition to or in support of any such abandonment. The Board may, by regulations or otherwise, authorize such temporary suspension of service as may be in the public interest.[4]

Petitioners say the requirement of a hearing for abandonment of service carries over to the provision authorizing a temporary suspension "by regulations or otherwise." We think this latter provision, however, is to be contrasted rather than equated with the one governing abandonment which calls for a hearing. This is the ordinary meaning of the statutory language, and nothing appears to weigh against its ordinary meaning. One may find that elsewhere in the Act, when notice and hearing need not precede Board action, it is explicitly so stated. See § 1005(a), 72 Stat. 794, 49 U.S.C.A. § 1485(a), with respect to emergency orders affecting safety. But each such provision is in a context which justifies explicitness. The omission in section 401(j) of language explicitly dispensing with a hearing is explained by the inclusion of language authorizing the Board to adopt a procedure for accomplishing temporary suspension "by regulations or otherwise."

Moreover, the difference between a temporary suspension of service and a permanent change, furnishes reasonable ground for different procedure. The statutory purpose as well as the statutory language thus support the Board's interpretation of its authority. Until now the interpretation that a full hearing need not precede a temporary suspension order appears to have gone unchallenged since Part 205 of the Board's Economic Regulations was first promulgated in 1949 pursuant to what is now section 401(j). As we held with respect to exemptions in Eastern Airlines, Inc. v. Civil Aeronautics Board, 87 U.S.App. D.C. 331, 185 F.2d 426, so here, the procedure the Board followed met the requirement of the Act.

We note petitioners' contention that the Board has gone beyond what it purports to do and has permitted an actual abandonment of service rather than a temporary suspension. Petitioners rely upon the circumstances that under the order American will sell equipment not required during the period of suspension, with the consequence that a later hearing on the application for amendment of the certificate will not be a fair hearing because a situation will have arisen, due to the so-called temporary suspension, which will prevent restoration of the previous position even if the amendment is later shown not to be justified. Further, it is asserted that Ozark, in rearranging its service under the suspension order, will acquire an historical interest in the market between St. Louis and Chicago, thus again prejudicing the fairness of the subsequent hearing on the certificate amendment, and, moreover, that the order makes a number of positive findings of fact which it will not be possible for

---

**3.** Civil Aeronautics Board, Order No. E–15284, May 27, 1960.

**4.** 72 Stat. 756, 49 U.S.C.A. § 1371(j) formerly Civil Aeronautics Act § 401(k), 52 Stat. 990 (1938).

the Board as a practical matter to disregard. These intangibles do exist but we are not justified because of them in making the choice petitioners insist upon, namely, to hold that the hearing required before the changes become permanent will be futile unless a hearing is held on the temporary changes. We must assume that the Board, subject to judicial review, will decide as it should when, after a hearing, it comes to the taking of permanent action; that is to say, we may not now assume an erroneous final decision because of this temporary decision. Peoples Broadcasting Co. v. United States, 93 U.S.App.D.C. 78, 209 F.2d 286. While we are not unaware as a practical matter of the possible disadvantage to parties incident to tentative interim decisions of public administrators, we cannot remake the statutory procedure because of this.

Affirmed.