**STANDARD AIRLINES, Inc. v. CIVIL AERONAUTICS BOARD.**

No. 9978.

United States Court of Appeals
District of Columbia Circuit.

Argued March 25, 1949.

Decided May 2, 1949.

Mr. Wallace M. Cohen, Washington, D. C., with whom Mr. G. Robert Henry, Washington, D. C., was on the brief, for petitioner.

Mr. Warren L. Sharfman, Attorney, Civil Aeronautics Board, Washington, D. C., for respondent. Messrs. Edward Dumbauld and William D. McFarlane, Special Assistants to the Attorney General, Mr. Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, Washington, D. C., and Mr. Herbert A. Bergson, Assistant Attorney General, were on the brief for respondent. Mr. Oliver Carter, Acting Chief, Enforcement and Litigation Section, Civil Aeronautics Board, Washington, D. C., also entered an appearance for respondent.

Before WILBUR K. MILLER and PRETTYMAN, JJ., and WATKINS, District Judge, sitting by designation.

PRETTYMAN, Circuit Judge.

This is a petition for review of an interlocutory order of the Civil Aeronautics Board, suspending the air carrier registration of the petitioner, Standard Air Lines, Inc. (hereinafter called "Standard").

Standard is an irregular air carrier, which engages in air transportation but does not hold a certificate of public convenience and necessity under the Civil Aeronautics Act.[1] Its operating authority was

---

[1] Sec. 401 of the Act, 52 Stat. 987 (1938), 49 U.S.C.A. § 481.

evidenced by "Letter of Registration No. 826", issued by the Board under its power to make exceptions to the general requirements of the statute. The letter read in part:

"This letter of registration is not transferable and may be suspended or revoked at any time in accordance with pertinent provisions of section 292.1 of the Economic Regulations, as amended.

"This is not a certificate of public convenience and necessity and is merely evidence of registration."

The Board issued an order, directing Standard to show cause why its letter of registration should not be suspended and then revoked for willful violations of the Act. A motion of an enforcement attorney, containing allegations of fact showing violations, accompanied the order, and Standard was directed to answer each allegation. The proposed suspension was for the pendency of the revocation proceedings Standard filed its verified answer, and a prehearing conference was held, at which issues were framed and a hearing date was set. Eight days later, and without a hearing, the Board suspended Standard's letter of registration.

At the request of Standard, the District Court issued a temporary restraining order, prohibiting the Board from carrying out the suspension. By stipulation of the parties, the Board agreed to withhold enforcement of the order until this court acted upon the instant petition, and upon the joint request of the parties, the court dissolved the restraining order. Later, this court ordered a stay of the Board's order pending review.

The issue is the validity of the order of the Board suspending without hearing Standard's registration during the proceedings for revocation. Standard contends that the Board is without authority to suspend a registration without notice and hearing, and that the order was arbitrary and capricious, being illegal and unsupported by substantial evidence.

The dispute concerning the necessity for a hearing involves interpretation of the Civil Aeronautics Act of 1938, certain regulations adopted by the Board pursuant thereto, and the constitutional requirements of procedural due process of law. It is clear and not debated that certificates of public convenience and necessity may not be suspended without notice and hearing. Section 401(h) of the Act requires hearing in those cases. But Standard does not have such a certificate. It has only a letter of registration granted pursuant to Section 292.1 of the Economic Regulations of the Board. Paragraph (d) (5) of that section of the Regulations provides that letters of registration shall be subject to revocation only after notice and hearing, but paragraph (d) (4), dealing with suspension, is silent with respect to such requirements. The latter paragraph provides that "Letters of Registration shall be subject to immediate suspension when, in the opinion of the Board, such action is required in the public interest."

Section 292.1 of the Regulations was adopted pursuant to sections of the Act[2] which gave the Board authority to classify carriers according to the nature of the services they perform, and to exempt any class of carriers from the requirements of the Act, or any regulation thereunder, upon making certain findings as to that class. By regulation,[3] the Board created a classification of noncertificated carriers which do not operate, or hold themselves out to the public as operating, between designated points regularly; and provided that no carrier should be deemed within that classification unless the services offered and performed by it are of such infrequency as to preclude an implication of a uniform pattern or normal consistency of operation. The regulation further provided[4] that no air carrier within that classification should operate without registration, issuable upon application.

The course of the opposing contentions is apparent from the foregoing general out-

---

[2] Sections 416(a) and 416(b) (1), 49 U.S.C.A. §§ 496(a), 496(b) (1).

[3] Section 292.1(b) of the Regulations.

[4] Section 292.1(d) (1) of the Regulations.

line of the Act and Regulations. The company says that it has a substantial investment in its property and business; that it is at present merely accused, and not convicted of violations; and that even for temporary suspension it is entitled to present its side of the story upon a hearing, since a suspension is in practical effect irreparably destructive to some extent of its business. The Board, on the other hand, says that but for the exemption of this class of carriers from the normal requirements of the statute, this petitioner would not be operating at all; that it was the carrier's choice to operate as an irregular and not as a certificated carrier; that it brought itself by application within the terms of the letter of registration, which expressly provided for suspension at any time; and that petitioner is a consistent and defiant violator of the terms of its classification and operating permit. In ultimate essence, the position of the Board is that it may validly reserve to itself the right to suspend without hearing an irregular operation, exempted by it from the normal requirements of the statute. The question is whether suspension without hearing is permissbile under the Act and the Constitution.

■ First, we notice that neither the suspension regulation nor the letter of registration mentions suspension without hearing. The regulation says "immediate suspension", and the letter says "suspended or revoked at any time". So that Standard cannot be said to have accepted an operating permit which was in terms suspendable without hearing. It did accept one subject to "immediate" suspension or suspension "at any time".

In problems such as this, the important theoretical aspects of governmental power and the restrictions upon such power are not the whole of the necessary consideration. There are practical aspects also. The facts depict the necessities, whether for the exercise of power or for restraint upon it. It is upon the pattern of practicalities that this case must be studied and decided.

Obviously, irregular, i. e., noncertificated, carriers have a place in the national air transportation system. Otherwise, the Board would not have provided for their registration and operation. Obviously, also, such carriers must have substantial investments in equipment and business and substantial undertakings in respect to payroll, rent, advertising, and the usual essentials to commercial transportation. Again, obviously, such a carrier has no general property right in its registration. Its right, whatever it is, is subject to immediate suspension when, in the opinion of the Board, public interest so requires. And, again obviously, suspension of operation for any considerable period of time would work considerable damage to the carrier's business, investment and financial stability.

■ So the problem before us concerns the statutory and constitutional rights of one who has a substantial property investment acquired in dependence upon a Government permit which is subject to immediate suspension at any time. What are the requirements of the statute and of due process of law in such a situation?

The controlling practicality, in our view, is that the suspension would destroy property, not a license property but investment and business property. The Government cannot make a business dependent upon a permit and make an otherwise unconstitutional requirement a condition to the permit. That principle applies to mail privileges.[5] An administrative agency cannot make an otherwise invalid proviso a condition to the grant of a permit.[6] We think the same principles apply here.

■ We do not mean to say that for suspension purposes the Board need grant a full-scale hearing such as it might conduct in a revocation proceeding. The nature and extent of the hearing may be appropri-

[5] Hannegan v. Esquire, Inc., 1946, 327 U.S. 146, 156, 66 S.Ct. 456, 90 L.Ed. 586.

[6] See Federal Communications Comm. v. Sanders Radio Station, 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869, and the discussion in Peoples Bank v. Eccles, 1947, 82 U.S.App.D.C. 126, 161 F.2d 636, rev'd on other grounds, 1948, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784.

ate to the action being considered. We had occasion to discuss that subject at length in two recent cases.[7] The point is that in our jurisprudence an opportunity to present contentions orally, with whatever advantages that method of presentation has, is one of the rudiments of the fair play required when property is being taken or destroyed. There is an assurance that contentions will be heard and understood upon a verbal statement, a degree of certainty not secured by the mere filing of written material.

█ Standard also argues that suspension of an air carrier's operating authority without a hearing is outside the authority delegated to the Board by the statute. It points to other portions of the Act which deal with suspension. Section 401(h), dealing with certificates, and Section 402(g), dealing with foreign air carrier permits, require notice and hearing before suspension. The only specific authority granted to the Board by the statute for suspension without a hearing, is conferred by Section 1005(a) and is expressly limited to emergencies affecting safety. The question, then, is whether the Board can, consistently with the statute, create another exception wherein notice and hearing are not required.

It is true that the Board has authority, under Section 205(a) of the Act, to make rules and regulations consistent with the provisions of the Act, and authority, under Section 416(b) (1), to exempt air carriers from the requirements of the Act or regulations passed pursuant thereto. But even in respect to emergencies affecting safety, Congress deemed it necessary to say specifically that a suspension could be without hearing. If Congress had intended that suspension for ordinary violations of the Act or regulations, not so critical as safety emergencies, could be without hearing, it would seem that it would have made appropriate provisions in the statute. It did not do so.

The case must be remanded for a hearing of such nature and extent as will permit the carrier to present orally its reasons why its registration should not be suspended pending the revocation proceedings. For that purpose, the Board's order of suspension must be set aside.

Order set aside and case remanded.

---

[7] L. B. Wilson, Inc., v. Federal Communications Comm., 1948, 83 U.S.App. D.C. 176, 170 F.2d 793; WJR, The Goodwill Station, Inc., v. Federal Communications Comm., 84 U.S.App.D.C. 1, 174 F.2d 226 (1948).