**Benjamin O. WHITE, Plaintiff,**

v.

**Donald E. FRANKLIN, John R. Kitchens, Walter M. Valesky and the United States of America, Defendants.**

**No. DC85–34–NB–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

May 27, 1986.

Julie E. Chaffin, Jackson, Miss., for plaintiff.

Patricia D. Rogers, Oxford, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on the motion to dismiss or alternatively for summary judgment filed by defendants Donald E. Franklin, John R. Kitchens, and Walter M. Valesky (hereinafter collectively referred to as "the individual defendants"), who are sued in both their individual and their official capacities, and on the motion to dismiss or alternatively for summary judgment filed by the United States of America ("the USA"). Being fully advised in the premises, the court is now in a position to rule on these motions.

### I. FACTS

This action, involving termination of plaintiff Benjamin A. White's flight examiner status, arose from the following uncontested facts. The plaintiff served as a designated flight examiner for the Federal Aviation Administration (the FAA), which is both a component of the Department of Transportation, 49 U.S.C. § 1652(e)(1) (1977, repealed Jan. 12, 1983) and an agency of the defendant USA, from 1968 to 1984. Under "certificates of authority" granted by the Federal Aviation Administrator (the "Administrator") pursuant to 49 U.S.C. § 1355(a) (1976 & Supp.1986) (em-

powerment of Administrator to certify private persons as examiners), flight examiners conduct flight tests both for certification of commercial pilots and for aircraft and instrument ratings. Although flight examiners serve as representatives of the FAA, they receive their compensation by charging the examinee a reasonable fee for conducting tests and completing the required reports. *See* 49 U.S.C. § 1355(a). Flight examiners are appointed for renewable periods of one year, 14 C.F.R. § 183.-15(a); however, 14 C.F.R. § 183.15(d) enumerates six circumstances under which a designation may be terminated during its one-year duration.

During 1983, White underwent routine evaluation inspections by defendant Walter W. Valesky, Operations Aviation Safety Inspector for the Flight Standards District Office (FSDO) in Jackson, Mississippi. Valesky allegedly witnessed several instances of improper performance by White and by letter dated February 15, 1984 notified White that his designation as flight examiner was terminated "immediately." Termination was purportedly in accordance with 14 C.F.R. § 183.15(d), which provides that:

> A designation [as flight examiner] made under this subpart terminates ... (4) upon a finding by the Administrator that the representative has not properly performed his duties under the designation; ... or (6) for any reason the Administration [the FAA] considers appropriate.

*Id.* The plaintiff allegedly had no notice that his certification was in jeopardy, nor was he specifically informed of the alleged violations until two weeks after termination. White subsequently demanded reconsideration of the decision, and requested information from defendant Kitchens, the Manager of the FSDO in Jackson, Mississippi, as to appeal procedures. Kitchens allegedly denied the existence of any appeal rights; however, after the plaintiff's continued requests, Kitchens reviewed the file and informed the plaintiff by letter that Valesky's action would not be altered.

At the plaintiff's request, a meeting was held on June 12, 1984 in Jackson, Mississippi, between White, Kitchens, Valesky, and defendant Franklin, another safety inspector with the Jackson FSDO. At this conference, the plaintiff was informed in detail of his alleged violations and given an opportunity to explain his actions. The plaintiff allegedly was unable to adequately explain his improper performance; subsequently, Kitchens notified the plaintiff by letter that the termination would not be altered.

The plaintiff filed an administrative claim with the FAA on January 8, 1985, in which he alleged entitlement under both the fifth amendment and 5 U.S.C. § 558 to notice and a hearing prior to termination of his certificate. During the pendency of this administrative claim, the plaintiff filed the instant cause of action on February 7, 1985 against the individual defendants in both their individual and their official capacities. In his complaint, the plaintiff alleged entitlement to a due process hearing prior to termination of his certification, and sought both reinstatement and damages. The administrative claim was denied on May 28, 1985; thereafter, the plaintiff filed his first amended complaint, adding the USA as a defendant and deleting the claim for reinstatement. In a second amended complaint, which controls this case, the plaintiff alleges the following causes of action:

(1) Deprivation of life, liberty or property without a due process hearing;

(2) Conspiracy by the individual defendants to deprive the plaintiff of liberty and property without due process of law, including falsification and withholding of information;

(3) Violation of 5 U.S.C. § 558(c) (1977), which provides the plaintiff with notice and an opportunity for a due process hearing prior to termination of his certificate of authority; and

(4) Negligent deprivation by the defendants of the plaintiff's due process rights.

Furthermore, the plaintiff specifically detailed his basis for long-arm jurisdiction over the individual defendants.

The defendants' motions to dismiss or alternatively for summary judgment allege that the instant action fails on jurisdictional grounds due to filing prior to final disposition of the administrative claim. Furthermore, the individual defendants contest long-arm service of process in their individual capacities. In addition, the defendants contend as a matter of law that the plaintiff was not entitled to a due process hearing. Finally, the defendants assert either absolute, qualified, or sovereign immunity from suit.

## II. ADMINISTRATIVE EXHAUSTION

■ The original and both amended complaints contain tort claims against the individual defendants both individually and in their official capacities. The defendants contend that suit against the individual defendants in their official capacities is effectively against the United States. *See Trammel v. Callaway*, 415 F.Supp. 212, 214 (N.D.Miss.1976) (suit against United States officer is against United States if decree operates against sovereign). Accordingly, the defendants assert that the plaintiff failed to exhaust his administrative remedies as required under 28 U.S.C. § 2675(a) (Supp.1986) prior to filing suit for money damages against the United States. *See Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir.1981) (exhaustion of administrative remedies a jurisdictional prerequisite to tort suit for money damages against United States). Thus, the defendants argue that this portion of the suit should be dismissed for lack of subject matter jurisdiction.

The defendants' argument is well taken in part. In his original complaint, the plaintiff asserted claims for reinstatement and money damages against the individual defendants, both individually and in their official capacities. The plaintiff's original complaint undoubtedly stated cognizable claims against the individual defendants in their individual capacities and, at least as to the non-monetary claim for reinstatement, against the individual defendants in their official capacities; thus, the plaintiff's original complaint presented a live controversy notwithstanding the administrative exhaustion requirements. After denial of the administrative claim, the plaintiff amended his complaint to include the United States as a defendant, to reallege his claim for damages against the individual defendants both individually and in their official capacities, to seek money damages from the United States, and to delete his claim for reinstatement. Clearly, the claim against the United States was properly filed after denial of the administrative claim. Furthermore, the amended complaint, realleging a claim for money damages from the individual defendants in their official capacities, was filed after denial of the administrative claim. No prejudice resulted to the defendants from the filing of the amended complaint; in addition, no objection could have been raised had the plaintiff filed the identical complaint as an entirely new cause of action rather than as an amended complaint in this cause. Under such circumstances, the court will not require the empty formalism of initiation of a new cause of action, nor will the relation-back doctrine of Fed.R. Civ.P. 15(c) apply to bar this suit. *United States v. Reiten*, 313 F.2d 673, 675 (9th Cir.1963) (non-application of relation-back doctrine when defeative of remedial purpose); 3 J. Moore, Moore's Federal Practice § 15.15(5) (2d Ed.1985) (refusal of courts to apply relation-back doctrine to cause prematurity of claim in amended complaint.)

■ However, the plaintiff did not present his conspiracy claim to an administrative agency. This claim, which seeks only money damages, is improper against both the United States and the individual defendants in their official capacities[1] un-

---

1. As discussed *infra* at section V(A), suit against the individual defendants in their official capac- ities constitutes suit against the United States.

der the administrative exhaustion requirements of 28 U.S.C. § 2675(a).

Accordingly, the defendants' motions to dismiss are well taken and shall be GRANTED as to the plaintiff's claim of conspiracy asserted against the United States and the individual defendants in their official capacities; however, the motions are not well taken and shall be DENIED as to other claims.

### III. LONG–ARM JURISDICTION

The individual defendants concede proper long-arm service of process on them in their official capacities, but contest long-arm jurisdiction in their individual capacities. All individual defendants are non-residents of Mississippi; thus, the plaintiff served them under the Mississippi long-arm statute, *see* Miss.Code Ann. § 13-3-57 (Supp.1985), by service on the Secretary of State of the State of Mississippi. The motion of the individual defendants apparently is based on the plaintiff's failure to specifically designate in both his original and his first amended complaints the provision of the Mississippi long-arm statute upon which jurisdiction is based.

■ Neither the original nor the first amended complaint specifies the basis for long-arm jurisdiction; however, the second amended complaint, filed subsequent to the defendants' motions, premises long-arm jurisdiction on the tort prong of the statute, *i.e.*, commission of a tort in whole or in part in Mississippi by a non-resident against either a resident or a non-resident of Mississippi. *See* Miss.Code Ann. § 13–

3–57. In the instant case, the plaintiff sufficiently alleges tortious acts committed in whole or in part in Mississippi to support long-arm jurisdiction against the individual defendants in their individual capacities, *e.g.*, Valesky's mailing of the termination letter to the plaintiff in Jackson, Mississippi; the meeting of all individual defendants with the plaintiff in Jackson, Mississippi, which meeting could form the basis for the plaintiff's conspiracy allegation; and Franklin's denial in Jackson, Mississippi that the plaintiff had any appeal rights. Service of process on the secretary of state is proper in cases wherein torts are committed on a resident by non-residents; therefore, the motion to dismiss or alternatively for summary judgment by the individual defendants in their individual capacities is not well taken on this ground and shall be DENIED.

### IV. RIGHT TO DUE PROCESS HEARING

■ As previously stated, the plaintiff's certification as flight examiner was terminated during its one-year period based on 14 C.F.R. § 183.15(d)(4) & (6). This regulation enumerates six circumstances wherein a flight examiner's designation may be terminated during its one-year period.[2] The regulation does not, however, address the manner by which termination during the one-year period is accomplished.

The plaintiff contends that before a designation may be terminated for any of the circumstances listed in 14 C.F.R. § 183.-15(d), both 5 U.S.C. § 558(c)[3] of the Admin-

---

**2.** Termination during the period of designation is distinguishable from non-renewal of a designation after expiration of the period, and only the former is covered by 5 U.S.C. § 558(c). *See Bankers Life & Casualty Co. v. Callaway*, 530 F.2d 625, 634–35 (5th Cir.), *reh'g denied*, 536 F.2d 1387 (5th Cir.1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977) (inapplicability of section 558(c) to failure to renew license), *cf. Taxay, M.D. v. United States*, 345 F.Supp. 1284, 1285–86 (D.D.C.1972), *aff'd*, 487 F.2d 1214 (D.C.Cir.1973) (discretion of Administrator to renew or fail to renew certification).

**3.** 5 U.S.C. § 558(c) (1977) provides in part as follows:

Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements. *Id.*

istrative Procedures Act and U.S. Const. amend. V mandate a due process hearing. In opposition, the defendants argue:

(1) that the plaintiff had neither a property nor a liberty interest in his certification so as to trigger fifth amendment due process safeguards;

(2) that 5 U.S.C. § 558(c) is inapplicable inasmuch as the "certificate of authority" issued to the plaintiff is not a "license"; and

(3) that 49 U.S.C. § 1355(a) (1976 & Supp.1986), which provides that the Secretary of Transportation may rescind any delegation made by him at any time and for any reason he deems appropriate, allows the actions taken by the defendants.

### A. Applicability of 5 U.S.C. § 558(c)

#### 1. Statutory Framework

In considering the applicability of 5 U.S.C. § 558(c), the court notes that the FAA was established as a component of the Department of Transportation, with an Administrator statutorily designated as head of the component. 49 U.S.C. § 1652(e)(1) (1977) (repealed Jan. 12, 1983). As such, the FAA was subject to the former version of 49 U.S.C. § 1655(h) (1976), *amended by* 49 U.S.C. § 1655(h) (Supp. 1986), which provided in part that:

> The provisions of subchapter II of chapter 5 ... shall be applicable to proceedings by the Department [of Transportation] and any of the administrations or boards within the Department [of Transportation] established by this chapter....

*Id.* Subsequently, all "functions, powers, and duties of the Federal Aviation Agency, and of the Administrator and other officers and offices thereof" were transferred to and vested in the Secretary of Transportation. 49 U.S.C. § 1655(c)(1) (Supp.1986).[4]

However, statutory requirements relating to notice, hearings, action upon the record, or administrative review continue to apply to exercise by the Secretary or the Administrator of any transferred functions. 49 U.S.C. § 1653(c) (Supp.1986). Furthermore, the amended 49 U.S.C. § 1655(h) (Supp.1986) contains only technical changes, and the above-quoted statutory language is retained in its entirety. Thus, during the entire relevant period of this cause of action, the FAA has remained subject to the above-quoted language of 49 U.S.C. § 1655(h) (1976 & Supp.1986) which mandates that the provisions of subchapter II of chapter 5 apply to proceedings by the Department of Transportation or its administrations or boards.

■ Subchapter II of chapter 5 encompasses 5 U.S.C. §§ 551–559 (1977 & Supp. 1986), commonly known as the Administrative Procedure Act (APA). A "proceeding," as defined in 5 U.S.C. § 551(12) (1977) of the APA, includes "licensing." "Licensing" in turn is the "agency process respecting the withdrawal, limitation, amendment, modification, or conditioning of a license." 5 U.S.C. § 551(9) (1977). 5 U.S.C. § 558(c) sets forth statutory due process requirements which must be followed prior to withdrawal, suspension, revocation, or annulment of a license. 49 U.S.C. § 1655(h) (1976 & Supp.1986) mandates that the FAA comply with the APA; therefore, conformity with the due process requirements of 5 U.S.C. § 558(c) is necessary in any "licensing" proceeding, including revocation of a license. Accordingly, the plaintiff is entitled to the benefits of section 558(c) if his "certificate of authority" constitutes a "license." [5]

#### 2. License

■ 5 U.S.C. § 551(8) defines "license" to include "the whole or a part of an

---

**4.** Notwithstanding the statutory transfer of functions, powers, and duties to the Secretary of Transportation, the traditional designation of "Administrator" is retained in federal statutes and regulations. *Cf. Board of Supervisors of Fairfax County, Va. v. McLucas,* 410 F.Supp. 1052, 1055 n. 9 (D.C.C.1976) (propriety of actions by Secretary of Transportation in transfer-

red areas statutorily delegated to FAA Administrator).

**5.** The defendants do not assert any of the statutory exceptions designated in 5 U.S.C. § 558(c), *see supra* note 3; thus, the court need consider only the applicability of the statutory language.

agency permit, *certificate,* approval, registration, charter, membership, statutory exemption or *other form of permission ...*" (emphasis added). The plaintiff received permission from the FAA to serve as flight examiner, which approval was subsequently embodies in a written document styled a "certificate of authority." Both the permission of the FAA and the certificate memorializing such permission constitute "licenses" within the meaning of 5 U.S.C. § 551(8). Inasmuch as the plaintiff possessed a license from the FAA, he was entitled to the due process hearing set forth in 5 U.S.C. § 558(c) prior to termination of his designation as a flight examiner.[6]

### B. Applicability of Fifth Amendment

 The plaintiff asserts a cause of action for damages directly under the Due Process Clause of the fifth amendment. *See Davis v. Passman,* 442 U.S. 228, 248–49, 99 S.Ct. 2264, 2278–79, 60 L.Ed.2d 846, 865 (1979). The fifth amendment provides in part that "[n]o person shall be ... deprived of life, liberty or property without due process of law." In the present case, the plaintiff's right to procedural due process under U.S. Const. amend. V depends on the presence of a legitimate "property" or "liberty" interest within the meaning of that amendment. *See Arnett v. Kennedy,* 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15, 39, *reh'g denied,* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974) (Powell, J., concurring) (requirement of property or liberty interest for fifth amendment procedural due process). If either such interest exists, then the fifth amendment gener-

ally requires "that an individual be given an opportunity for a hearing *before* he is deprived" of such interest, *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971) (emphasis in original), although a post-deprivation remedy may be sufficient under certain circumstances not present in the case at bar.[7]

#### 1. Property Interest

 In the present case, the plaintiff's license qualifies as a protectible property interest, *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94 (1972) (license or property interest entitled to procedural due process); *Wells Fargo Armored Service Corp. v. Georgia Public Service Commission,* 547 F.2d 938, 941 (5th Cir.1977) (same); thus, fifth amendment procedural due process protections were required prior to termination. *Cf. Cleveland Board of Education v. Loudermill,* 470 U.S. 532, —, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503 (1985) (fourteenth amendment due process requirement of notice and appropriate opportunity for hearing prior to deprivation of life, liberty, or property).

#### 2. Liberty Interests

The plaintiff alleges deprivation of two distinct liberty interests, specifically loss of reputation and loss of the right to pursue a specific profession, without a fifth amendment due process hearing. The court must determine whether either such liberty interest exists in the present case.

##### a. Loss of Reputation

 "Liberty," as used in the fifth amendment, includes a person's interest in

---

**6.** The defendants further assert that 5 U.S.C. § 558(c) mandates that the license be "required by law," *see Kitlutsisti v. Arco Alaska, Inc.,* 592 F.Supp. 832, 843 (D.Alaska 1984) (applicability of 5 U.S.C. § 558(c) limited to licenses required by law), and that the certificate of authority is not such a license. The defendants apparently argue that issuance of a written "certificate of authority" is not required by law before one may serve as a pilot examiner. Assuming without deciding that the *Kitlutsisti* doctrine applies in this district, one obviously may not serve as a pilot examiner without some form of permission, even oral, from the FAA. The requirement

of FAA permission clearly constitutes a license required by law.

**7.** *See, e.g., Hudson v. Palmer,* 468 U.S. 517, —, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393, 407 (1984) (impractibility of pre-deprivation hearing when deprivation of property through random and unauthorized conduct; post-deprivation hearing sufficient); *Stern v. Butterfield,* 529 F.2d 407, 410–11 (5th Cir.1976) (constitutional permissibility of emergency revocation of pilot certificate without prior notice).

his good name, reputation, honor, or integrity. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972). However, neither the mere failure to rehire nor the termination of a job constitutes a deprivation of liberty, absent public disclosure of the reasons for the discharge. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684, 692 (1976). Similarly, in the present case, the simple termination of the plaintiff's certificate of authority, unaccompanied by stigmitizing public disclosure of the alleged reasons for termination, does not constitute a deprivation of a liberty interest.

**b. Right to Pursue Specific Profession**

■ The plaintiff also claims unconstitutional deprivation of his right to pursue a specific profession. The United States Supreme Court has held that

[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment....

*Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377, 1388 (1959). *See also Phillips v. Bureau of Prisons,* 591 F.2d 966, 970 (D.C.Cir.1974) (pursuit of one's profession a fundamental liberty); *Fitzgerald v. Hampton,* 467 F.2d 755, 761–62 (D.C.Cir.1972) (same). Furthermore, the right to pursue a specific profession qualifies as a liberty interest whether the employment is private or public. *See Clemente v. United States,* 568 F.Supp. 1150, 1168 (C.D.Cal.1983), *rev'd on other grounds,* 766 F.2d 1358 (9th Cir.1985) (liberty interest in right to pursue Civil Service career).

■ In the present case, the defendants' actions totally foreclosed the plaintiff's opportunity to pursue his career as a flight examiner. *Cf. Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230, 1236 (1961) (no liberty interest if terminated employee remains free to secure other

employment in chosen profession). As such, the plaintiff possessed a liberty interest requiring a fifth amendment due process hearing prior to deprivation.

**C. Effect of 49 U.S.C. § 1355(a)**

■ 49 U.S.C. § 1355(a) (Supp.1986) provides that the Secretary of Transportation may rescind any delegation made by him "at any time and for any reason which he deems appropriate." *Id.* Notwithstanding this provision, neither the statute nor the interpretive regulations, *see* 14 C.F.R. § 183.15, address the manner by which termination is accomplished. 49 U.S.C. § 1355(a) cannot and does not abrogate the plaintiff's constitutional due process rights under U.S. Const. amend. V, nor does this statute by its terms supersede the plaintiff's rights under 5 U.S.C. § 558(c). Rather, the due process provisions compliment 49 U.S.C. § 1355(a) by setting forth the manner in which the termination contemplated in that statute is accomplished.

**D. Examiner Designation and Qualification Record**

In further support of their contention that the plaintiff's designation was terminable merely upon notice without a due process hearing, the defendants stress the following provision contained in a document signed by the plaintiff styled "Examiner Designation and Qualification Record":

Certification: I certify that I am familiar with the requirements for this designation, its privileges and limitations, and that the information stated herein is true. *It is understood that this designation may be terminated upon notice by the FAA for the reasons specified in Section 183.15(c) of the Federal Aviation Regulations* (emphasis added).

Section 183.15(c) [14 C.F.R. § 183.15(c)] states: "Unless sooner terminated under paragraph (d) of this section, a designation as a Designated Airworthiness Representative is effective until the expiration date shown on the Certificate of Authority." As previously stated, section 183.15(d) of the FAA regulations [14 C.F.R. § 183.-

15(d)] enumerates six circumstances wherein a designation may be terminated, including the two circumstances relied on by the defendants in the present case.

▇▇▇▇ The plaintiff was required to sign the "Examiner Designation and Qualification Record" prior to issuance of his certificate of authority. Issuance of a license or certification which is a prerequisite to engaging in certain employment could not be conditioned upon waiver of constitutional rights, *see Standard Airlines v. Civil Aeronautics Board*, 177 F.2d 18, 20–21 (D.C.C.1949) (neither government nor administrative agency may condition issuance of required permit upon acquiescence to unconstitutional provision), and any such condition would be void. However, the provision embodied in the document does not specify the procedure required before the FAA may issue notice of termination nor does it provide for termination without a hearing, *id.*; thus, the provision does not conflict with the due process requirements of either 5 U.S.C. § 558(c) or the fifth amendment. Accordingly, the plaintiff's signature on the Examiner Designation and Qualification Record is not a waiver of his statutory or constitutional due process rights.

### E. Conclusion

The plaintiff was entitled to a due process hearing under either 5 U.S.C. § 558(c) or U.S. Const. amend V. prior to termination of his certificate of authority. Furthermore, the plaintiff's right to a due process hearing is not affected by 49 U.S.C. § 1355(a) or by his signature on the Examiner Designation and Qualification Record. Since the plaintiff did not receive the hearing to which he was entitled, the court must consider whether any defendant possesses immunity under the facts of the case.

## V. IMMUNITIES

### A. Sovereign Immunity

▇▇▇▇ Both the defendant USA and the individual defendants in their official capacities assert the bar of sovereign immunity. Clearly, the United States possesses sovereign immunity from suit for money damages except to the extent that it expressly consents to suit. *Dalehite v. United States*, 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427, 1437–38 (1953). Furthermore, sovereign immunity also bars suit for money damages against officials in their official capacities absent a specific waiver by the government.[8] *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir.1984); *see also Holloman v. Watt*, 708 F.2d 1399, 1401–02 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Keene Corp. v. United States*, 700 F.2d 836, 845 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Sanchez-Mariani v. Ellingwood*, 691 F.2d 592, 596 (1st Cir. 1982); *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863, 869–70 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *cf. Inupiat Community of Arctic Slope v. United States*, 230 Ct.Cl. 647, 680 F.2d 122, 132, *cert. denied*, 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982) (allowance of money damages suits for constitutional violations against federal employees in individual capacities). The doctrine of sovereign immunity has no application to suit against individuals for actions in their individual capacities.

▇▇▇▇ The traditional sovereign immunity of the government, and hence of the individual defendants in their official capacities, to tort suits was abrogated to some extent by the Federal Tort Claims Act

---

**8.** Sovereign immunity does not bar suits for specific, non-monetary relief against government officers sued in their official capacities where the challenged actions of the officials are allegedly unconstitutional or beyond the official's statutory authority. *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 689–91, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628, 1635–36 (1949). Although the actions in present case allegedly are both unconstitutional and contrary to statute, this exception to sovereign immunity does not apply since the plaintiff seeks only money damages.

(FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1976). The FTCA waives sovereign immunity and permits recovery in tort only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. Thus, for the plaintiff to sue under the FTCA, he must demonstrate that the United States and the individual defendants in their official capacities, if private persons, would be liable to him under Mississippi law. *Kynerd v. United States Department of Housing & Urban Development*, 607 F.Supp. 117, 118 (S.D.Miss. 1985). The FTCA therefore makes the federal government liable to the same extent as a private party for certain torts of employees acting within the scope of their employment. *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390, 397 (1976). The FTCA waiver of sovereign immunity applies to negligent torts, as well as to certain specifically enumerated intentional torts. *See* 28 U.S.C. § 2680(h), *Carlson v. Green*, 446 U.S. 14, 19–20, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15, 24 (1980) (28 U.S.C. § 2680(h) a waiver of sovereign immunity of United States only for certain intentional torts committed by federal law enforcement officers). As with the doctrine of sovereign immunity, the FTCA has no application to claims against the individual defendants in their individual capacities.

■ Furthermore, the FTCA contains certain exceptions wherein the waiver of sovereign immunity is inapplicable, *see* 28 U.S.C. § 2680(a)–(h) (1965 & Supp.1986). If the court determines that the general provisions of the FTCA abrogate sovereign immunity in a particular case, the court then must determine whether any exceptions to the FTCA apply such that sovereign immunity is not waived and the government remains immune from liability.

### 1. Fifth Amendment Due Process Claims

■ In the instant case, the plaintiff alleges fifth amendment due process claims, violations of the APA, and conspiracy against the individual defendants, in both their individual and official capacities, and against the United States. Although a cause of action may be brought directly under a constitutional amendment, *see, e.g., Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (eighth amendment); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (fifth amendment due process clause); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999 29 L.Ed.2d 619 (1971) (fourth amendment), suits seeking money damages for constitutional torts must be brought against the responsible federal officials, *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895, 914 (1978), in their individual capacities, *see Inupiat Community of Arctic Slope v. United States*, 680 F.2d at 132, and not against the government itself, which retains its traditional sovereign immunity. *Bivens*, 403 U.S. at 410, 91 S.Ct. at 2012, 29 L.Ed.2d at 634 (Harlan, J., concurring); *see also Keene Corp. v. United States*, 700 F.2d at 845 n. 13 (no governmental waiver of sovereign immunity for constitutional torts). The FTCA does not abrogate the government's sovereign immunity with respect to constitutional torts, at least when such torts are not cognizable under state law. *See Brown v. United States*, 653 F.2d 196, 201–02 (5th Cir.1981) (waiver of sovereign immunity limited to suits predicated on tort cause of action cognizable under state law; general inapplicability of FTCA waiver to constitutional torts; possible waiver when constitutional tort arises under intentional tort exceptions to FTCA); *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 104–05 n. 9 (2d Cir.1981) (waiver of sovereign immunity limited to suits predicated on tort cause of action cognizable under state law; inapplicable to constitutional torts); *Birnbaum v. United States*, 588 F.2d 319, 322 (2d Cir.1978) (recovery under FTCA dependent on state cause of action); *United States v. Smith*, 324 F.2d 622, 625 (5th Cir.1963) (same). *But see Avery v.*

*United States,* 434 F.Supp. 937, 944 (D.Conn.1977) (FTCA general waiver of sovereign immunity for constitutional torts). Thus, the fifth amendment due process claims against the defendant United States and the individual defendants acting in their official capacities are barred by sovereign immunity. Accordingly, the motions to dismiss by these defendants with respect to the fifth amendment due process claims are well taken and shall be GRANTED.

### 2. APA Claims

The plaintiff alleges that the conduct of defendants Franklin, Kitchens and Valesky violated 5 U.S.C. § 558(c) by denying plaintiff "prior notice of the action against him and an opportunity to demonstrate his compliance with all applicable requirements." This cause of action depends entirely upon a federal statute, and therefore cannot be the basis for recovery against either the United States or the individual defendants acting in their official capacities under the waiver of sovereign immunity embodied in the FTCA. The waiver of the government's sovereign immunity under circumstances where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b), cannot apply to alleged negligence of the United States in failing to carry out a statutory duty. The reason is manifest:

> [I]t is impossible to equate the relationship of the parties in such a situation to any state law relationship where the person sought to be bound is a "private person" who "would be liable to the claimant in accordance with the law" of the state. The existence or nonexistence of a claim ... depends entirely upon Federal statute. There being no possibility of such a situation being construed by state law, the attempt to vindicate such right, it seems clear, cannot bring it within the ambit of the tort claims law language which says in effect that the United States may be sued ... [if] conduct

perpetrated by a private person would give rise to the claimant under state law. *United States v. Smith,* 324 F.2d 622, 625 (5th Cir.1963); *accord, Baker v. F & F Investment Co.,* 489 F.2d 829, 835 (7th Cir.1973) (inapplicability of FTCA to complaint based exclusively on federal law); *Bosco v. United States Army Corps of Engineers,* 611 F.Supp. 449, 454 (D.C.Tex. 1985) (same), *see also Feres v. United States,* 340 U.S. 135, 141–42, 71 S.Ct. 153, 157, 95 L.Ed. 152, 158–59 (1950) (no parallel between United States armed forces/serviceman relationship and any state/private citizen relationship; FTCA therefore inapplicable).

Inasmuch as sovereign immunity for this cause of action is not waived under the FTCA, the motions to dismiss by both the defendant United States and the individual defendants in their official capacities are well taken and shall be GRANTED.

### B. Individual Defendants—Individual Capacities

The plaintiff specifically avers that all alleged actions of the individual defendants were done "with the authority of their offices with the FAA...." Inasmuch as the alleged acts of the individual defendants in their individual capacities therefore were performed by the defendants in their functions as federal employees, the court must determine whether either the absolute or qualified immunity accorded to federal employees in certain cases applies.

The standard of immunity for a federal official varies as to ordinary torts and constitutional or statutory torts. *See Claus v. Gyorkey,* 674 F.2d 427, 431 (5th Cir.1982) (dependence of immunity standard on constitutional or ordinary tort). Federal employees possess absolute immunity from damage suits for ordinary torts, if the allegedly tortious acts are within the outer perimeter of the official's line of duty. *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434, 1443 (1959); *see also Evans v. Wright,* 582 F.2d 20, 21 (5th Cir.1978). However, as to constitutional and statutory torts, most federal employees possess only qualified immunity.

### 1. Ordinary Torts

In order for an act of a federal employee to be within the outer perimeter of that employee's duties, such that absolute immunity applies with regard to ordinary torts, the action complained of must "bear some reasonable relation to and connection with [the official's] duties and responsibilities to be within the scope of his authority," *Claus v. Gyorkey*, 674 F.2d at 431, *quoting Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir.), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967); and the action of the official must be connected with a "discretionary function." *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). *See generally Williams v. Collins*, 728 F.2d 721, 727–28 (5th Cir.1984). In the present case, the plaintiff alleges that the individual defendants in their individual capacities while acting within their job functions conspired to wrongfully deprive the plaintiff of liberty and property interests, including falsification and withholding of information. Thus, the court must determine whether the individual defendants in their individual capacities are shielded by absolute immunity for this ordinary, common-law tort.

The plaintiff alleges in his complaint that the individual defendants "conspired together to deprive plaintiff of liberty and property without due process of law, and in furtherance of the conspiracy, defendants Franklin and Valesky falsified and withheld information relating to the May, 1983 flight test which was the alleged basis for the termination action." Inasmuch as neither the plaintiff nor any defendants have chosen to brief this issue, and discovery apparently was not engaged in to ascertain what specific acts, if any, constitute a conspiracy, it is not clear to the court exactly what conspiratorial acts the individual defendants allegedly committed. At this stage it appears that the alleged falsification of documents would not be within the outer perimeter of the individual defendants' job duties. Thus, the court cannot hold at this juncture that the conspiracy claim against the individual defendants in their individual capacities is barred by absolute immunity. Accordingly, the motion to dismiss or alternatively for summary judgment by the individual defendants in their individual capacities is not well taken on this ground and shall be DENIED.

Although summary judgment is not appropriate on this claim as to the individual defendants in their individual capacities, the court is disturbed by the failure of the plaintiff in his supporting brief to indicate the facts upon which his conspiracy allegation is based. The plaintiff may have a valid conspiracy action against the defendants; however, the court warns that if the conspiracy allegation ultimately is shown to be a groundless assertion made with absolutely no basis, the court will consider whether sanctions under Fed.R.Civ.P. 11 (1985) are appropriate against the plaintiff.

### B. Constitutional Torts

As to constitutional torts, the individual defendants are not within the limited class of persons possessing absolute immunity from damages liability for acts within their job functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396, 403 (1982) (enumeration of persons possessing absolute immunity within job functions). However, federal officials performing discretionary functions who are not within the class of those absolutely immune possess qualified or "good faith" immunity from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. Qualified immunity is judged objectively by reference to clearly established law. *Id.* Furthermore, the court may determine on a motion for summary judgment both the currently applicable law and whether that law was clearly established at the time the alleged violation occurred. *Id.* Thus, if this court concludes that the individual defendants acting within their individual capacities violated such clearly established

constitutional or statutory rights, then qualified immunity does not bar this action.

 In the present case, 5 U.S.C. §§ 551(9) & (12) and 558(c), and 49 U.S.C. § 1655(h), read in conjunction, demonstrate the plaintiff's statutory right to a hearing prior to termination of his license. *See New York Pathological & X-Ray Laboratories, Inc. v. Immigration & Naturalization Service,* 523 F.2d 79, 82 (2d Cir.1975) (revocation of license requires notice and opportunity for hearing under section 558(c)); *Blackwell College of Business v. Attorney General,* 454 F.2d 928, 933–34 (D.C.Cir.1971) (approved status of school for attendance by nonimmigrant aliens constituted license; notice and hearing under section 558(c) necessary prior to revocation of status). Furthermore, the plaintiff's designation as a flight examiner clearly was protected by the fifth amendment and was entitled to due process considerations. Thus, in both cases the individual defendants should have realized that the plaintiff's designation as a flight examiner could not be terminated in mid-term without a due process hearing. The individual defendants in their individual capacities therefore may not interpose the bar of qualified or "good faith" immunity to these claims.[9] Accordingly, the motion to dismiss or alternatively for summary judgment by the individual defendants in their individual capacities is not well taken and shall be DENIED.

## VI. CONCLUSION

The plaintiff's claims of conspiracy and intentional infliction of emotional distress shall be DISMISSED as to both the United States and the individual defendants in their official capacities due to the failure of the plaintiff to exhaust his administrative remedies. Furthermore, the plaintiff's claims of violation of his fifth amendment due process rights and his rights under the Administrative Procedures Act shall be DISMISSED as to both the United States and the individual defendants in their official capacities due to the bar of sovereign immunity. Accordingly, the United States and the individual defendants in their official capacities shall be DISMISSED from this suit with prejudice.

As to the individual defendants in their individual capacities, the motions to dismiss or alternatively for summary judgment are DENIED with respect to all claims, *i.e.,* the claims regarding conspiracy, the statutory right of the plaintiff to notice and a hearing under 5 U.S.C. § 558(c), and the constitutional right of the plaintiff to a fifth amendment due process hearing.

An order will issue accordingly.

---

**9.** As previously noted, a cause of action for money damages based on deprivation of constitutional rights must be brought against the responsible federal officials in their individual capacities. *See* text at V(A)(1) *supra.* Furthermore, such a constitutional cause of action may not be maintained by a federal employee against his employment superior, *Williams v. Collins,* 728 F.2d 721, 727 (5th Cir.1984), at least if the federal employee has some alternate remedy, *see Bush v. Lucas,* 647 F.2d 573, 577 (5th Cir.1981), *aff'd,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Although the plaintiff in the present case held a license from the FAA to examine pilots, he received no compensation from that agency, nor was he classified as a Civil Service employee. Under such circumstances, the doctrine of *Williams v. Collins* is inapplicable.